Our first case is 24-2542 United States v. Philip Epps. Mr. Wenger, whenever you're ready. Good morning, your honors, and may it please the court, Jesse Wenger on behalf of the United The district court got it right the first time around when it denied Mr. Epps' Rule 33 motion by concluding that its deadlock instruction was not unduly coercive. Our argument and appeal focuses on two bases that the district court abused its discretion when it later sua sponte reversed itself without notice to the parties. One, we believe this court abused its discretion by failing to acknowledge or apply the invited error doctrine, and two, we believe the district court abused its discretion by failing to apply the plain error doctrine. As the record demonstrates, had the district court done so, Mr. Epps would not have been able to meet his burden to demonstrate plain error. If I may, I would like to start with what I believe is the cleanest path to reversal here, and that would be jumping straight to the third prong of plain error review. So that is putting aside whether the invited error doctrine applies or was applicable here, and that sets aside the propriety of the deadlock instruction itself. We feel comfortable with our arguments, but the cleanest way is to go straight to whether if there was error, if there was plain error, did that error affect Mr. Epps' substantial rights? And as the district court itself found at the bench trial, the evidence was overwhelming of Mr. Epps' guilt of possession with intent to distribute narcotics, of illegal possession of a firearm, and of possession of a firearm in furtherance of a drug trafficking crime. And if the evidence was in fact overwhelming in support of Mr. Epps' guilt, then any error could not have affected Mr. Epps' substantial rights. Mr. Wenger, I'm just not sure if that's the right focus. Our jurisprudence in this area seems to be more about the court's supervisory powers, and the harm seems to be injecting an improper factor into jury deliberations, such as how much it will cost to have a retrial, or the improper notion that it has to reach a verdict. So I think that overwhelming evidence usually makes sense because it's usually about whether there was some sort of error in the evidence, or maybe even on an element where there's overwhelming evidence as to that element. But I'm not sure overwhelming evidence addresses the harm that we've found is caused by an improper jury instruction in this particular and specific aspect. So let's go back to the first step of plain error and march through each of those steps. And the government believes that this was entirely a, as the district court said, perhaps not perfect, but an appropriate and proper and certainly not irreversible deadlock instruction. The error here, as everyone concedes if there was an error, is the inadvertent omission of the word try. And in the space of a instruction that was hundreds of words long, and in the context of a jury charge that contained preliminary and final instructions. So focusing on the deadlock instruction itself, the tenor of this entire instruction was not an effort to blast the jury into a verdict. It was not an effort to get the jury to reach a verdict for anything but the evidence for it. What you have is the district court at least two times telling the jury to do its best, multiple times telling the jury to apply the law that it had been provided. Again, in hard copy by the way, they had hard copies of the final instructions, and to focus on the evidence, not to let bias or prejudice get in their way. That was the tenor of the instruction. So that by itself is not unduly coercive. Under this court's case law, for something to be unduly coercive, you have to... So is this a prong one or prong two argument? Right now, prong one argument. Simply, was this deadlock instruction unduly coercive? And just to be clear, if you think that we, if we were to agree that it was an abusive discretion that plain error review was not applied, it sounds like you're asking us to do that rather than... Correct, Your Honor. I believe this court on this record could reverse the district court's subsequent order granting Mr. Epps' Rule 33 motion and remand for sentencing. At prong one, whether this, really at prongs one and two, whether there was this particular instruction was unduly coercive is purely a matter of law for this court to decide. Coercion, a step one question, or even a step two question, doesn't coercion get to prejudice at step three? I mean, we all know, you've admitted that the missing word, try, like telling a jury that it has to reach a verdict is an error, right? No, Your Honor. I'm admitting that everyone agrees that the basis for the challenge is the inadvertent, the district court omitting the word try. You don't admit that telling a jury it has to reach a verdict is an error? If that sentence was standing alone, if the district court did not go on to the rest of its instruction, yes, of course instructing a jury that it has to reach a verdict is error. A district court cannot blast a jury into the verdict. And we also have case law that says supplemental instructions are more problematic than an error that might be in the primary set instructions because it comes later after the jury has already reported a deadlock. Do you agree with that? Yes, Your Honor. Okay. So there was an incorrect instruction during a supplement that told the jury it had to reach a verdict. So at the very, I mean, I guess you don't want to agree that that was an error at step one, but that is an incorrect thing for the district court to do. It is an unlawful instruction standing alone. And you just think in context, it was not coercive, right? Your Honor, I would say the deadlock instruction itself in its totality was not an unduly coercive instruction, even with the inadvertent omission of the word try. What else, what cured, just looking at the deadlock instruction in isolation, that those couple of paragraphs, why is that not erroneous? Because a reasonable jury, as the lawyers and the court and the courtroom stood there, the data points we have is that not one, the lawyer, not the parties perceived anything untoward about that instruction. If this was an erroneous instruction that was intended to blast a jury into a verdict, someone would have said, Your Honor. I don't really follow that argument because anytime that we get an error on an issue that comes up on plain error review, it's because nobody noticed it at the time. And sometimes we grant relief because there was an error and it was plain. So basically you're saying nobody noticed it, it couldn't possibly have been a plain error, but that's not the law. The law is whether it's consistent. It's a plain error if it was wrong and if it violates basically clearly established law. That's not the exact phrase. So not noticing it can't possibly just mean it couldn't have been that bad. Your Honor, but this court has said that whether a deadlock instruction is unduly coercive, it's a fact-specific inquiry that takes into consideration the totality of the circumstances. That is one of the circumstances that I have looked to in making my argument that in the context of the whole instruction, that a reasonable jury would not have felt blasted into reaching a verdict. Okay, so that sounds like prejudice. That sounds like step three of plain error. And so I was trying to get at why you're saying we're supposed to look at coercion at step one. Because whether the deadlock instruction is proper at step one, was this an unlawful instruction, this court's case law says is a fact-specific inquiry. Many of these cases are coming not on plain error review. They're coming after an objection at trial, so it's more of a harmless error. But the lawfulness of the instruction, standing alone, whether there's a legal error, is still a fact-specific inquiry as to the deadlock instruction itself. I don't know, to me it doesn't sound like a prong three coercion issue. It sounds like a prong two plain or obvious issue. So the line about you have to is it's an error. I think what I'm hearing you saying is that in the context of the entire instruction and the written instructions that were given to the jury, it wasn't plain or obvious. Yes, it was an error, but was it plain or obvious? So why shouldn't we be focusing on prong two? Your Honor, we could also focus on prong two. If this court assumes that just having that omission of the word try is just by itself an error, no matter what else. Well, it is an error. That sentence was an error. Then we look to the totality of the instructions of was it a plain? And the case law again says, all right, so what can you do and what can't you do? And the case law says that a jury, a district court, has wide discretion to encourage a jury to continue to reach a verdict. And the case law says the only plain... Focus you a little bit. I think you had said one reason it was a plain was because no one objected. Can you give us the other factors? Assume we know all the cases you're about to cite and just tell us what can we apply in the context of that law to say that this was not plain? I know one thing you've said is no one objected. You've already said that before. What else, if anything, made it not plainly an error? Are we talking about the prong two analysis right now? Mm-hmm. So the only plain error would be if the district court's instruction as a whole lasted this jury into reaching a verdict. That it led the jury to reach a verdict for a reason other than the evidence before it. That's not what this instruction did. So this court has not demanded a talismanic phrase that a district court must use. It has not demanded that if you don't provide certain cautionary instructions, it is per se plain error. All this court has demanded is that the district court's instruction must not lead the jury to reach a verdict for reason other than evidence before it. Looking at this deadlock instruction in its totality is focusing really on did this plainly do that? And the government's interpretation, it plainly did not. And not only for the reason of the deadlock instruction, but also because the jury had available to it all the final instructions. And I see my time is up if I may continue. Which contained all the cautionary language that we would want a jury to receive. And we assume that juries follow the instructions. And I take your honor's comments earlier that a deadlock instruction does come at a particular point in time, but it does not eviscerate what came before it, which was all the proper instructions in the context of the entirety of the deadlock instruction and not just the first two sentences of that. Okay, thanks. We'll hear you back on rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Robert Gamberg. I represent Mr. Epps in this matter. And Your Honors, if it pleases the court, I will take up where the court left off. And Your Honor, there is no question, at least in my mind, and perhaps reasonable minds can differ, that the instruction was error. The court, the district court admitted as much when the court indicated that it did not give the instruction that we had the error was certainly clear. I think that's really the, that's the main question, right? That sentence is, it's error. But when you look at, so in Jenkins, the Supreme Court said we look at these things in context. In a case of ours called Gambone, a tax case, we looked at an error in context and the error there was erroneous. But in context, we said, it's not a plain error. So here, where the judge also said to the jury, you should only reach an agreement if you can do so honestly and in good conscience. And when he told them that no one should ever change your mind because other jurors see things differently or just to get the case over with. And when he gave them a copy of the written instructions that didn't, that were not erroneous, in that context, why was the error about you have to? Why was that plain or obvious? And I'm glad you brought it up. And of course, all these type of issues, the context is the jurors sending some sort of note telling that they're in an impasse. In this particular case, when they sent that note out indicating that they were in an impasse, it was the very first sentence in that context, basically saying, you must reach a verdict. And then from there, the court went into some other language that, again, is acceptable. But as in Jenkins... And what do we do with that other? I understand that was the first sentence, but what do we do with the other language? Well, again, you want to bring it up in context. What we do with that other language and look at that and see if that was enough to dispel that initial statement that Jenkins had such a big issue with, which is basically not you have to try to reach a verdict, you have to reach a verdict. So that's the very first thing they hear, the jurors, after sending out that note. So in the context of this fact-specific particular case, it bothered the district court so much that after a period of time, after initially denying the Rule 33, it stuck with them to the point where he rectified that mistake. Right. That's one way of looking at it. Does the fact that on the Rule 33 motion, the court initially denied it suggest that the error could be... Its plainness could be subject to reasonable dispute? That's certainly without question, but we're at an abuse of discretion standard. So does that qualify as an abuse of discretion when the court is obviously still concerned about after a period of time elapsed? And I respectfully suggest to this court that it does not constitute an abuse of discretion, that the district court wanted to rectify a mistake that was made that certainly, in my opinion, affected the substantial rights of the defendant. When the court came back to it the second time, it explained that he finds that in the interest of justice, it requires a new trial. Is that the right, was that the right standard to use? So I think... That's the Rule 33 standard, right? Correct. But I think that the court was kind of relating that to what we would call step four in the analysis, right? Whether it seriously affects the fairness, integrity of the proceedings. So I think that's what the court was alluding to. I don't want to presume that I'm in the district court's mind, but I think that that's where he was going with that. And I think it's perfectly reasonable when considering the abuse of discretion standard that we're under. Can you address your counterpart's argument that the original instruction is part of the context, and that because it correctly instructed the jurors, for instance, but don't ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote. Can you address whether or not that is part of the context, and if so, whether that cures the error? Well, I certainly think it's part of the context, but I do not believe that it cures the error. Again, because when we're looking at it as a whole, this is in direct response to a note sent from the jury. And again, I perfectly understand that this is the context that most of these cases arise. And the very first thing they hear when they're reconvened is that you basically must reach a verdict. So I agree that it is part of the context, but if we looked at that in every case, it would be such a high burden that reversal would almost never happen, because all of the jury instructions, at least in my experience, start with that type of language. And I'm just trying to calibrate your position here. If in the original instruction there had been, as some courts do, an instruction that says, in the event you're at an impasse, and they sort of reiterate the now-model Allen charge, not the one that was in Fioravanti. And again, I know that's not what happened here. I'm just trying to get a sense of when you think an error is plain in light of the context. And I want to make sure I understand the court's question. Are you saying in the initial? Yeah. So in the initial instructions... Part of your argument is, well, this was in direct response to a question about impasse. Absolutely. So in response to the court's question, I'm not so sure that the language used is impasse, but it does certainly say that you should stick to your own opinions about the facts and the evidence and the laws I instructed. However, again, in this particular case, and I certainly think that that's part of the context of the instructions, but the very first thing that the jury hears when they return after sending out this note is that you must reach a verdict. And I think that is... And again, I'm just trying to...  So even if, this hypothetical, even if a proper Allen charge had been given in the original instruction, that means prior to this question, your position is that this instruction would still be plain error. Yes, it is. And that is under the case law. And I understand that it's a very fact-specific inquiry, but in this particular case, I do think that it is plain error. If it is plain error, then we still need to look at whether the defendant's substantial rights were affected, right? And the considerations include the weight of the evidence. Right. So I understand your brief is taking issue with some of the evidence that was presented, but overall, he made some inculpatory statements that were recorded. Well, and thank you for that question. I'm going to take it a few steps further than I took it in my brief, respectfully. So what we have here, and I will address that question directly in just 30 seconds. What we have here is a situation where an informant was arrested, made some contact with a person. They are in a hotel with that informant. And that informant indicates that a supplier will be coming in a very vague description, a white SUV. When that SUV pulls up, nothing else happens. I'd respectfully suggest that the officer jumped the gun, but whether you believe that or not, nothing else happens, never gets out of the car, never gets out of the car with any narcotics, never gets out of the car with any firearms. The informant who was present never makes an identification of who she believes that individual is coming to resupply him or her. Furthermore, they turn off the body-worn cameras in spite of the directive that was given to them to never turn off your body-worn cameras. Certainly that may impact on a jury. To take it further, when he is taken into custody and a full search is done, they test all the items in that track for DNA. There is no DNA match to the defendant. There is DNA match to a female. They never test the DNA of the informant. There are conversations that were taken from the defendant's phone, and for the purposes of our argument, I'll concede it's the defendant's phone, that have another individual copied. That individual had an address. They never do any investigation to see whether that is actually an individual. To take it even further than that, in addition to all that, there is two ways to look at what Mr. Epps said while in custody. He pulls up to a location without anything else happening. He is immediately descended upon by multiple police officers. He is immediately taken into custody and then placed in the back of a patrol car or some kind of law enforcement vehicle where there is a camera, and he does say words to the effect of, I'm getting arrested. I'm being taken into custody. Or doing things I'm not supposed to be doing. Doing things I'm not supposed to be doing, absolutely. And that could be delivering narcotics. That could also be driving a vehicle to a location of which he had no idea what was in there, right? Or it lacked dominion and control over that. And I see the court's reaction, but let me just, if I may, and saying I messed up, I effed up for doing that thing. And that fits squarely with the lack of DNA, the lack of fingerprints, the lack of any physical evidence of his inside of that trap. The trap. So I understand your argument. I think, you know, the district court said in its opinion after the Vence trial that the evidence was overwhelming. That was its view, and it was there to hear the witnesses live and to see them live. So if we were to just, for sake of argument, take that the evidence was overwhelming, I guess we have some authority that says that it would just be, we have some authority that says that a coercive instruction is presumptively prejudicial. And there might be some case in which you could overcome that presumption. Why should we overcome that presumption when at least the district court, implicit in its ruling, reversing its prior decision on the Rule 33, did find that it affected his, it had to, it had to affect his substantial rights. It's over, though. It didn't address substantial rights. It didn't address prejudice, at least not directly. It just said this is a real problem. It's a legal error, and that's an interest of justice problem. Well, that would presume that the district court didn't understand what the plain error doctrine required. And I would say implicitly in the court's ruling, he knew what the plain error doctrine required. What if instead of applying the interest of justice standard when he revisited the question, the district court had applied the plain error standard? Do you think he would have come out the same way? I think that's what the court did. He doesn't say that he did that, right? That's correct, but I think it's implicit in his reversal of himself. Okay. If the court has no further questions of me. Okay, thank you. Thank you.  Oh, I'll be brief. I just want to respond to a couple of points. Number one, the comparison to the Jenkins instruction. The entire tenor of the Jenkins instruction, the entirety of which is in DC Circuit opinion, and tenor of it was telling the jury repeatedly, you have to reach a verdict. I'm not going to stand for it. This is what you have to do. Think about it. You're going to come back tomorrow and reach a verdict. Looking at the totality of the deadlock instruction here, the tenor of the entire instruction was just go back and do your best. So the instructions are not comparable to the extent to say that Jenkins just needs to control because there is one line in Jenkins that's similar to one line in the deadlock instruction here. But that one line was decisive in Jenkins. Respectfully, I think the entire deadlock instruction was decisive in Jenkins. The context and the record as a whole. It needs to be considered in the context. Yeah, and I think that... To find the rest of the context, you have to go to a different opinion. Yes, Your Honor. But if you look at the actual instruction that was challenged, and that was at issue, that was fully part of that record, that line captured fairly the tenor of that instruction in a way that the inadvertent omission for the word try in that line does not capture the tenor of the district court's instruction at issue here to say this is plain error. Second, I heard my friend on the other side talk about a lot of implicit... The district court must have implicitly done this, and the district court just skipped straight to step four when he's talking about the interest of justice. But the district court doesn't have discretion just to skip to step four of plain error review. The district court is also bound to go through the steps. And as I talked about, as I had my briefs, had the district court done that, it would not have found that Mr. Epps met his burden. On plain error review, it's Mr. Epps that needs to meet his burden to meet the stringent requirements of plain error review. He did not do that there, and the district court did not find that he, in fact, did. It simply went straight to the Rule 33 standard and said, after the fact, the interests of justice require reversal. And I'm not going to belabor in my last seconds here the evidence in the case. But it was overwhelming. On plain error review, this is a discretionary decision for both of the district court and for this court. And evidence is not open to two interpretations. You have monitored phone calls between a dealer and a supplier setting up a drug deal. You have the dealer showing up to consummate the drug deal and damning evidence uncovered therein. And for those reasons, your honor, I would ask that this court reverse the district court and remand for sentencing. Okay, thank you, counsel. We'll take the matter under advisement.